Christopher Berry (CA Bar No. 283987)
ANIMAL LEGAL DEFENSE FUND
525 E. Cotati Ave.
Cotati, CA 94931
(707) 795-2533 ext. 1041 / (707) 795-7280 (fax)
cberry@aldf.org

William S. Eubanks II (DC Bar 987036, admitted *pro hac vice*)
MEYER GLITZENSTEIN & EUBANKS LLP
2601 S. Lemay Avenue
Unit 7-240
Fort Collins, CO 80525
(970) 703-6060 (phone) / (202) 588-5409 (fax)
beubanks@meyerglitz.com

William N. Lawton (DC Bar 1046604, admitted *pro hac vice*)
MEYER GLITZENSTEIN & EUBANKS LLP
4115 Wisconsin Ave. NW, Suite 210
Washington, D.C. 20016
(202) 588-5206 x 107 (phone) / (202) 588-5049 (fax)
nlawton@meyerglitz.com

Counsel for Defendant-Intervenors
American Wild Horse Campaign,
Animal Legal Defense Fund, and Carla Bowers

**IN THE UNITED STATES DISRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION**

| | |
|---|---|
| DEVILS GARDEN PRESERVATION GROUP, *et al.*,<br><br>    Plaintiffs,<br><br>        v.<br><br>UNITED STATES FOREST SERVICE, *et al.*,<br><br>    Defendants. | No. 2:17-cv-02185-MCE-KJN<br><br>**INTERVENORS' STATEMENT OF FACTS** |

1. Intervenors hereby incorporate by reference the facts identified as undisputed in Intervenors' Response to Plaintiffs' Statement of Facts and Intervenors' Response to Defendants' Statement of Facts.

2. Intervenors hereby incorporate by reference the facts described the declarations submitted with the Motion to Intervene, ECF No. 18, which neither Plaintiffs nor Defendants objected to in response to the motion to intervene. These declarations demonstrate that Intervenors would be harmed by Plaintiffs' requested relief of an order requiring the removal of thousands of wild horses from the Devil's Garden Wild Horse Territory ("WHT"), and that a court order in favor of Intervenors on their cross-claim, or in favor of Defendants, would redress Intervenors' injuries. *See* Roy Decl., ECF No. 18-2; Wells Decl., ECF No. 18-3; Bowers Decl., ECF No. 18-4.

3. The Devil's Garden Territory Management Plan ("TMP") is a document that "identifies management and monitoring objectives and actions for future management of the [wild horse] herd and their habitat" over "15-20 years." AR863. Among the TMP's purposes was establishing "criteria to be considered when determining excess numbers of wild horses." AR864. In 2013, the Forest Service adopted a guideline that specifically describes such criteria, which requires the Service to

> Cooperate with the Bureau of Land Management to capture and remove excess wild horses when analysis of grazing utilization and distribution, trend in range ecological condition, actual use, climate (weather) data, current population inventory, wild horses located outside the WHT in areas not designated for their long-term maintenance and other factors such as the results of land health assessments demonstrate[s] removal is needed to restore or maintain the range in a thriving natural ecological balance with other uses and the productive capacity of their habitat.

AR1131. The Service stated that this guideline "clarifies the relationship between BLM and the Modoc National Forest, and criteria for determining how animals will be determined excess and removal necessary." AR981.

4. Neither the TMP nor the accompanying EA nor the accompanying Decision Record stated that these criteria were met. None of these documents stated that a certain number

Defendant-Intervenors' Statement of Facts

1

of horses were considered excess at that time, nor that removal of a specific number of excess horses was then necessary.

5. The Forest Service and BLM, on which the Service relies for wild horse population management, have clearly stated the need for site-specific, current excess determinations as a predicate for any removal of wild horses, as described in detail in Intervenors' brief. AR1685; AR1657; AR1686.

6. The TMP stated the need for "additional site-specific environmental analysis" for "adjustments to population." AR1132.

7. After the publication of the TMP, the Forest Service has acknowledged the need for specificity in excess determinations. AR6099; AR3173.

8. No specific excess determination based on current information exists in the record that would support Plaintiffs' requested relief of the immediate removal of thousands of wild horses from the Devil's Garden WHT.

9. The National Environmental Policy Act requires the Forest Service to take "a hard look at the environmental consequences of [a] gather" of wild horses at the time of the proposed roundup and removal. *In Def. of Animals*, 909 F. Supp. 2d 1178, 1189 (E.D. Cal. 2012) (England, J.), *aff'd* 751 F.3d 1054 (9th Cir. 2014); AR5942; Frolli Decl. ¶ 31.

10. The only NEPA documents that appear in the record related to the Forest Service's TMP are the 2013 Environmental Assessment and Finding of No Significant Impact, and a 2016 Determination of NEPA adequacy. Neither of these documents evaluate environmental impacts associated with Plaintiffs' requested relief of the immediate removal of thousands of wild horses from the Devil's Garden WHT.

11. Although the Forest Service has begun drafting plans for further removals of wild horses, *e.g.* AR1581, the record does not contain any NEPA analysis associated with any such plan.

12. The Forest Service's draft plan proposing to remove 1,500 horses annually from the Devil's Garden WHT for three years would be among the largest removals that have been

performed by either the Forest Service or BLM in the last five years, according to information publicly available on BLM's website.

13. The Devil's Garden wild horses are "a unique herd [] cherished by the Forest Service" and have "extraordinary qualities." AR1546.

14. Research on the Devil's Garden wild horses has been "the most controversial research" that the scientist performing this work "has ever been involved in." AR1787.

15. "[T]he Modoc National Forest's actions may set a precedent for future Forest Service management of wild horses." AR3247; AR6060.

16. The Forest Service has not yet come to a final decision about how to manage the Devil's Garden wild horse population, and is still considering various alternatives, including whether to reach the "Appropriate Management Level" established in the TMP over three, five, or ten years, AR6733, and whether to build its own holding facility for horses removed from the range, AR1586. The Service has also established a "collaborative group" to issue "recommendations for the implementation of the [TMP that] will provide innovative approaches and solutions." AR6061.

17. The Service is considering managing wild horses in the Devil's Garden WHT through the use of slaughter or the sale of wild horses for slaughter, despite the fact that Congress has specifically prohibited BLM from taking these actions. AR6742. The Service acknowledges that these actions would cause "enormous public controversy," *id.* and would require additional NEPA analysis. AR6234.

18. The American Wild Horse Campaign has repeatedly proposed that the Forest Service use a humane form of fertility control, which has a 30-year history of successful use in managing wild horse herds, for managing wild horses in the Devil's Garden WHT. The American Wild Horse Campaign has also offered to raise funds for the use of this humane fertility control in the Devil's Garden. However, the Forest Service has not yet accepted the Campaigns' offers.

19. Although the D.C. Circuit invalidated the Forest Service's unlawful elimination of more than 23,000 acres of the Devil's Garden WHT from wild horse use, the Forest Service has

not accounted for the larger amount of land now available to wild horses or conducted any environmental review to address this issue, which will directly impact any future excess determination.

Dated: April 25, 2018                          Respectfully submitted,

                                                     __/s/_____
William N. Lawton
(admitted *pro hac vice*)
Meyer Glitzenstein & Eubanks LLP
4115 Wisconsin Ave. NW, Suite 210
Washington, D.C. 20016
(202) 588-5206 x 107 (phone)
(202) 588-5049 (fax)
nlawton@meyerglitz.com

William S. Eubanks II
(admitted *pro hac vice*)
Meyer Glitzenstein & Eubanks LLP
2601 S. Lemay Avenue, Unit 7-240
Fort Collins, CO 80525
(970) 703-6060 (phone)
(202) 588-5409 (fax)
beubanks@meyerglitz.com

Christopher Berry
(CA Bar No. 283987)
Animal Legal Defense Fund
525 E. Cotati Ave.
Cotati, CA 94931
(707) 795-2533 ext. 1041 (phone)
(707) 795-7280 (fax)
cberry@aldf.org

Counsel for Defendant-Intervenors